UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ELAINE CASTIGLIONE,

                                        Plaintiff,

            -against-                                    1:09-CV-0967 (LEK/DRH)

MARIO PAPA; HODGSON RUSS, LLP; CARL J.
KEMPF, ESQ.; LOUIS J. CASTIGLIONE, JR.;
BARBARA KELLER CASTIGLIONE; GEM
JEWELERS, INC.; CHRISTINA A. CHAITE;
MARK P. LASCH; KEYBANK N.A.; KEYCORP;
POLLY HOYE; KAREN K. PETERS JAD

                                        Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

        On August 26, 2009, Plaintiff Elaine Castiglione ("Plaintiff"), acting *pro se*, filed her

Complaint against Defendants Louis J. Castiglione, Jr.; Barbara K. Castiglione; Christine A. Chaite;

Gem Jewelers, Inc. ("Gem Jewelers");[1] Mario Papa; Hodgson Russ LLP;[2] Carl J. Kempf; Mark P.

Lasch; Key Private Bank; KeyBank, N.A.; KeyCorp;[3] Judge Polly A. Hoye; and Judge Karen K.

Peters[4] (collectively, "Defendants").  Dkt. No. 1.  On December 23, 2009, Plaintiff amended her

Complaint, deleting Key Private Bank as a Defendant, and, pursuant to 42 U.S.C. §§ 1983, 1985,

1986, and 28 U.S.C. § 1367, alleging constitutional and state law violations by the remaining

_____

        [1] Louis J. Castiglione, Jr.,Carbara K. Castiglione Christine A. Chaite, and Gem Jewlers shall
be referred to collectively as the "Castiglione Defendants."

        [2] Defendant Papa and Hodgson Russ LLP shall be referred to collectively as the "Hodgson
Russ Defendants."

        [3] Defendants Lasch; Key Private Bank; Keybank, N.A.; and KeyCorp shall be referred to
collectively as the "KeyBank Defendants."

        [4] Defendants Hoye and Peters shall be referred to collectively as the "Judicial Defendants."

Defendants.  Am. Compl. (Dkt. No. 15).  Presently before the Court are Motions to dismiss filed

separately by the Castiglione and Hodgson Russ Defendants (Dkt. No. 23); the Judicial Defendants

(Dkt. No. 24); and the KeyBank Defendants (Dkt. No. 26); as well as Plaintiff's Cross-Motion

seeking a stay, sanctions, and other forms of relief (Dkt. No. 34); Plaintiff's request for entry of

default judgment as to Defendant Carl J. Kempf (Dkt. No 37); Defendant Kempf's Cross-Motion in

opposition to default judgment and request to join the Hodgson Russ Defendants' Motion to dismiss

(Dkt. No. 40); and Plaintiff's Motion for service costs and other relief (Dkt. No. 38).


I.      BACKGROUND

        Plaintiff, a *pro se* litigant, asserts that each of the named Defendants played a role in an

alleged conspiracy ultimately meant to deprive her of her rightful inheritance under her father's will

and accomplished through constitutional and state law violations.  The precise facts and legal claims

asserted by Plaintiff are difficult to discern, though her broad allegations are apparent.

        Louis J. Castiglione, Plaintiff's father died on November 12, 2004, leaving his wife, Elaine

Castigilione, and two children, Defendant Louis Castiglione, Jr. ("Junior") and Plaintiff Elaine

Castiglione, as well as Plaintiff's daughter, Defendant Christine Chaite ("Chaite").  Plaintiff's

mother sought probate of an unsigned copy of Plaintiff's father's will ("the will") and codicil ("the

codicil") in the New York State Surrogate Court.  Plaintiff challenged the aforementioned will and

codicil on various grounds relating to their authenticity and whether they accurately reflect her

father's testamentary intent.  Defendant Judge Polly A. Hoye ("Hoye"), a Fulton County Surrogate

Court Judge, heard the challenges, "found them to be frivolous," and, on January 11, 2006, allowed

probate of the will.  See Dkt. No. 23 Ex. A ("Hoye Order") at 8.  Plaintiff appealed this decision,

2

and on March 29, 2007, Defendant Karen K. Peters ("Peters"), a New York Supreme Court Justice serving on the Appellate Division, New York Supreme Court, Third Judicial Department, affirmed the Hoye Order, with Judges Spain, Mugglin, Rose, and Lahtinen (all non-parties in this action) concurring. See Dkt. No. 23 Ex. B ("Peters Order").

The instant action stems from events leading up to and occurring during the probate process. Plaintiff claims not to be appealing the state court rulings regarding the actual probate of her father's will, insisting instead that she is alleging constitutional and state violations committed by various actors participating in the probate process.

Plaintiff's Amended Complaint begins with allegations seeking to document the "ruthless and unlawful measures that Junior was willing to take in order to ensure his inheritance would . . . jump for 50% to 100% . . . . [by] depriving his ill sister of any financial benefit [under the will] . . . [and] to also commit 'the perfect murder' of his only remaining sibling." Am. Compl. ¶ 2. Primarily, Plaintiff alleges that Junior, in a display of "sociopathic vindictiveness" toward her, forged their father's signature on the codicil, fraudulently created an unsigned version of the will for use in the Surrogate Court hearing Plaintiff's probate challenge to the will, fraudulently concealed parental assets, unduly influenced Plaintiff's father and mother, and, in conspiracy with Defendant Mario Papa ("Papa"), an attorney and relative, sought to bribe judicial figures, namely Defendants Hoye and Peters, to induce a fraud upon the court and achieve a predetermined outcome to Plaintiff's probate challenge. Id. ¶¶ 3-4, 8, 12.

Plaintiff claims that Papa, acting individually and as an agent of his law firm, Defendant Hodgson Russ, LLP, played an instrumental role in the alleged conspiracy, which she claims "divest[ed] Plaintiff [of her] due process rights in the Probate matter." Id. Plaintiff alleges that

3

Papa taught Junior how to conceal unnamed assets, and then, in breach of fiduciary duties and in furtherance of a fraud upon the court, advised Junior to create a codicil naming the latter as executor of the trust and last will and endowing him with authority to remove all trust funds. This latter power, it is alleged, was designed to ensure, and did ensure, the cooperation of Defendants Mark P. Lasch ("Lasch"), the trustee of a trust created by the will, and KeyBank, N.A. and KeyCorp, the institutions in which the funds were held. Id. ¶6. Lasch, Plaintiff alleges, acting individually and as an agent of the KeyBank Defendants, breached his fiduciary obligations as trustee,[5] was unjustly enriched, and knowingly participated in the conspiracy to conceal assets and defraud the court and Plaintiff, by going along with the scheme orchestrated by Junior and Papa.[6] Id.

Plaintiff alleges that Junior, Papa, and Lasch's alleged scheme to defraud was further secured when Papa "enlisted the help the help of [Defendant Carl] Kempf to create fraudulent documents and to fraudulently misrepresent facts at oral argument at Appeal."[7] Id. Junior's wife, Defendant Barbara Castiglione and niece (Plaintiff's daughter) Defendant Christine Chaite "were also given supportive roles to play in the fraud." Id. Plaintiff does not allege any further facts about what those supportive role included. Plaintiff sues Gem Jewelers, of which Barbara Keller Castiglione is allegedly the agent, owner, principle, stockholder, or employee. Am. Compl. at 10.

---

[5] Specifically, Plaintiff alleges that Defendant Lasch "thumbed his nose at Plaintiff's repeated letters" demanding an accounting and distribution under the allegedly false will. Am. Compl. ¶ 6.

[6] KeyBank NA and KeyCorp are alleged to be liable as well under theories of respondeat superior as well as negligence. See Am. Compl. ¶ 3 Causes of Action.

[7] Defendant Kempf is sued individually and as an agent/employee of Hodgson Russ, LLP. It may be inferred from the Amended Complaint that the alleged production fraudulent documents and misrepresentation of facts occurred in his providing services for the proponents of probate.

4

Plaintiff apparently seeks to hold Gem Jewelers liable for the role played by Barbara Keller Castiglione, or derivatively, for the acts of Barbara Keller Castiglione's husband, Papa.  Id.

Finally, Plaintiff alleges that Junior, Papa, and the other Defendants secured their unlawful goals through providing bribes to the Judicial Defendants in exchange for "a predetermined case outcome" in which the Judicial Defendants would accept the fraudulent codicil and a testator witness' affidavit as accurate and reliable.  Id. 6-12.  Plaintiff alleges that neither Judge Hoye nor Peters truly believed these documents to be authentic, but rather participated in the fraud for their personal gain.  Id.  Plaintiff does not assert the form or value of the bribes; in fact, her Amended Complaint asks the Judicial Defendants very directly "what was the price of your integrity?".  Dkt. No. 15 ¶¶ 9, 12.  She alleges, however, that certain occurrences attest to the fact that bribes were made.  As to Judge Hoye, these include four "secret ex parte meetings" between Hoye and Papa prior to Hoye's Order and an "invitation" by Hoye for Plaintiff to appeal her decision.  Id. ¶ 8-9.

Plaintiff became aware of the ex parte meetings after discovering court documents, which mention them and allegedly read as "a veritable contractus criminis for predetermined case outcome."  She does not attach or otherwise describe these documents other than to state that they evince those "terms and conditions [that] were precisely stated by Papa and precisely fulfilled by Hoye."  Id. ¶ 11.

As to Judge Peters, Plaintiff alleges she also partook in ex parte contacts, admitted hearsay evidence, and eventually issued an opinion "affirming Hoye's Opinion in the face of all of Papa's fraud upon a court and bogus documents."  Id. ¶ 12.  The Peters Order allegedly "bear[s] no relationship to either the facts of the case or controlling law and, remarkably, directly affirms that it is OK to divest a party of their Federal rights to due process [in a manner] . . . this very Appellate

5

tribunal is well on record" as holding is a basis for reversal.  Id.  From this, Plaintiff concludes that

Peters delivered her opinion in exchange for a bribe.

Plaintiff admits that the facts in her Amended Complaint are not fully developed.  Am.

Compl.; see also Dkt. No. 34 at 56.  Plaintiff contends that the "full facts and causes of action

against each defendant" will be included in a forthcoming second amended complaint.  Am. Compl.

at 1, see also Dkt. No. 34 at 56.  Plaintiff has been unable to provide these facts and causes of action

as a result of medical issues, which, because she is acting *pro se*, have prevented her from being

able to craft a detailed complaint.  See Dkt. No. 34 at 56.   Defendants, meanwhile, have filed three

separate Motions to dismiss (Dkt. Nos. 23, 24, 26).  Defendant Kempf was not party to any of these

Motions and filed no response to Plaintiff's Amended Complaint, claiming not to be properly served

until May 5, 2010 at the earliest, see Dkt. No. 40-2, the same date Plaintiff filed a Request for

default judgment as to Kempf, (Dkt. No. 37) and a separate Motion seeking service costs and other

relief (Dkt. No. 38).  On May 10, 2010, Kempf filed a Cross-Motion to vacate Plaintiff's request for

entry of default against him and for leave to join in the Hodgson Russ Defendants' Motion to

dismiss.  Dkt. No. 40.


## II.     THE KEMPF MOTIONS

Before reviewing the merit of Defendants' Motions to dismiss, the Court will first address

the issues surrounding Defendant Kempf.  Specifically, the Court will address whether default

judgment should lie against Kempf for his failure to respond to Plaintiff's Complaint and Amended

Complaint, or whether the Court should grant leave for Kempf to join the Hodgson Russ

Defendants' Motion to dismiss.

## A.      Default Judgment and Proper Service

Federal Rule of Civil Procedure 55(a) provides, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).  The Court may "set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." FED. R. CIV. P. 55(c).  Plaintiff, pursuant to Rule 55, seeks default judgment against Defendant Kempf as a result of his failure to timely respond to her pleadings.

Generally, defendants must serve a responsive pleading "within 21 days after being served with the summons and complaint." FED. R. CIV. P. 12(a)(1)(A)(i).  Unless otherwise ordered by a court, plaintiff must "serve[] on every party . . . a pleading filed after the original complaint." FED. R. CIV. P. 5(1)(B).  However, "[n]o service is required on a party who is in default for failing to appear.  But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." FED. R. CIV. P. 5(2).

Federal Rule of Civil Procedure 4 requires that a plaintiff serve a summons and copy of the complaint, generally within 120 days of filing that complaint. FED. R. CIV. P. 4(a), (c), (m). Generally, for plaintiffs located within a judicial district of the United States, service is proper if it: "follow[s] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1).  New York law allows for personal service; delivery of the summons and complaint to a person of suitable age and discretion at the defendant's "actual place of business," and then mailing copies to the defendant at his last known residence or at his actual place of business; or service upon an

authorized agent.  N.Y. C.P.L.R. § 308.[8]  Alternatively, under the Federal Rules, proper service may

be accomplished by:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone
> of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service
> of process.

FED. R. CIV. P. 4(e)(2)

In the instant action, Plaintiff filed her initial Complaint (Dkt. No. 1), naming Kempf as a

Defendant, on August 26, 2009 and allegedly personally delivered him a copy on December 16,

2009.  See Dkt. No. 37 ¶ 6.  Plaintiff served Kempf with a copy of her Amended Complaint via First

Class mail to his home address on December 24, 2009.  Id. ¶ 10.  Kempf filed no response until May

5, 2010, when he moved (Dkt. No. 40) to vacate Plaintiff's request for default judgment against him

(Dkt. No. 37).  For the purpose of his opposition to Plaintiff's request for default judgment, Kempf

does not deny receiving service of the original Complaint.  Mem. in Opp'n to Default Judgment

(Dkt. No. 40-2) at 3.  Kempf claims however, that such service "was without legal significance,

because the complaint did not contain any cognizable claim against him . . . . [Furthermore, h]ad

Kempf had any obligation to respond . . . it was eliminated by the filing of an Amended Complaint

which contains certain claims against him."  Id.

Kempf's latter argument is correct; Plaintiff's Complaint alleges only that Kempf was

involved in a "criminal nexus" with state officials through which she was divested of her Sixth

Amendment right to representation in the probate litigation and the instant matter.  Dkt. No. 1 ¶ 4.

---

[8] Where service cannot be made with due diligence through the first to methods, New York
additionally provides for "affix and mail" service.  See N.Y. C.P.L.R. § 308(4).

Her Amended Complaint, greatly expands her claims against Kempf, naming at least nine causes of action.[9] Am. Compl. at 11.  Given that Plaintiff's amended pleading asserts new claims for relief, she was required to serve that Amended Complaint on Kempf. FED. R. CIV. P. 5(2).  Plaintiff attempted to do so via First Class mail on December 24, 2009, but there is no indication that such mailing was accompanied by personal service, or that Plaintiff served a copy of the summons and Amended Complaint on a person of suitable age and discretion at the Kempf's actual place of business or with his authorized agent.  See Dkt. No. 37 Ex. A.  Proper service of the Amended Complaint has, therefore, not been accomplished as to Kempf.  Accordingly, granting default judgment against him for failure to respond would be inappropriate.  Accordingly, Plaintiff's request for default judgment against Kempf (Dkt. No. 37) is denied.

### B.    Leave to Join the Hodgson Russ Defendants' Motion to Dismiss

On May 10, 2010, Defendant Kempf Cross-Motioned to vacate Plaintiff's request for default judgment and request leave to join the Hodgson Russ Defendants' Motion to dismiss (Dkt. No. 23). Dkt. No. 40.  The Court hereby grants Kempf leave to so join the Hodgson Russ Motion (Dkt. No. 23), which shall serve as Defendant Kempf's response to Plaintiff's Amended Complaint.

### III.    MOTIONS TO DISMISS

The Judicial Defendants, the Castiglione and Hodgson Russ Defendants, and the KeyBank Defendants have each filed separate Motions to dismiss Plaintiff's Amended Complaint.  These Motions argue certain bases for dismissal that are specific to the filing Defendant group, as well as

---

[9] The Court notes that some of these causes of action may be duplicative or invalid. Nevertheless, the Amended Complaint undeniably asserts new claims against Kempf from those in her original Complaint.  Compare Dkt. No. 1 with Dkt. No. 15.

other bases for dismissal are common to all.  The Court finds ample grounds to dismiss Plaintiff's

action based on these commonly alleged bases.

> **A.    The Amended Complaint Fails to Conform to Federal Rules of Civil Procedure**
>
> **8 & 10**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."   The Second

Circuit has explained the rationale behind the rule, stating,

> [t]he statement should be plain because the principal function of pleadings under the Federal
> Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer
> and prepare for trial.  The statement should be short because unnecessary prolixity in a pleading
> places an unjustified burden on the court and the party who must respond to it because they are
> forced to select the relevant material from a mass of verbiage.

Salahuddin v. Cuomo, 861 F. 2d 40, 42 (2d Cir. 1988) (citations and quotations omitted).  In

furtherance of the above goals, Rule 8 additionally requires that "each averment of a pleading shall

be simple, concise, and direct."  FED. R. CIV. P. 8(d)(1).

Similarly, to ensure defendants are provided notice and afforded the opportunity to properly

and thoroughly respond to allegations made against them, Rule 10(b) provides, "[a] party must state

its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of

circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction

or occurrence . . . must be stated in a separate count or defense."  FED. R. CIV. P. 10(b).

Plaintiff's Amended Complaint fails to conform to these Rules.  While providing a host of

colorful remembrances, asides, and legal conclusions, Plaintiff's Amended Complaint is anything

but simple, concise, and direct.  Defendants cannot be required to respond, and be held to those

responses in future litigation, where the factual and legal allegations remain so unclear.  Plaintiff's

promise that she plans to file "[her] Second Amended complaint, which will contain full facts and causes of action against each defendant" only reinforces this conclusion.  Am. Compl. at 3.  While this fact alone requires the Court to dismiss the instant Amended Complaint without prejudice, for the reasons discussed below, Plaintiff's cause of action is also inadequate for substantive and procedural reasons that require more than a properly drafted complaint to correct.

**B.      The Amended Complaint is Barred Under the <u>Rooker-Feldman</u> Doctrine**

Plaintiff's Amended Complaint is barred under the <u>Rooker-Feldman</u> doctrine.  That doctrine recognizes that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings," <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983), as "[t]o do so would be an exercise of appellate jurisdiction" reserved exclusively for the Supreme Court.  <u>Rooker v. Fidelity Trsut Co.</u>, 263 U.S. 413, 416 (1923); <u>see also</u> <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77 (2d Cir. 2005).  The Supreme Court has limited the applicability of the <u>Rooker-Feldman</u> doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).  Accordingly, the Second Circuit has recognized

> that there are four requirements for the application of <u>Rooker-Feldman</u>. First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]."  Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced."

<u>Hoblock</u>, 422 F.3d at 85 (quoting <u>Exxon Mobil Corp.</u>, 544 U.S. 280) (footnote omitted).  Applying these factors, a

federal suit is therefore barred by <u>Rooker-Feldman</u> only if it complains of injury from the

state-court judgment and seeks review and rejection of that judgment, but not if it raises "some independent claim." . . . . Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from <u>Rooker-Feldman</u> if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed.

<u>Id.</u> at 86.

Thus conceived, the <u>Rooker-Feldman</u> doctrine bars this Court's adjudication of Plaintiff's action. First, Plaintiff lost her probate challenge in the New York State Surrogate Court, <u>see</u> Hoye Order (Dkt. No. 23 Ex. A ), a decision affirmed on appeal. <u>See</u> Peters Order (Dkt. No. 23 Ex. B). While Plaintiff now alleges that Defendants denied her due process,[10] her claim essentially is that the state court's decision to allow probate of the will was incorrect and resulted in her not receiving an inheritance she claims to be rightfully hers. <u>See, e.g.</u>, Am. Compl. ¶¶ 5, 7.

While Plaintiff seeks to frame her current action in terms of constitutional violations and various claims not before the state court, this Court cannot overlook the plain fact that her Amended Complaint consists of an array of reasons why her father's will should not have been admitted to probate. <u>See, e.g.</u>, <u>id.</u> ¶¶ 3, 5, 7. Plaintiff is essentially complaining that she suffered a lesser inheritance than she was rightfully due as a result of the state court's conclusion regarding the authenticity of the will and codicil. <u>Id.</u> Insofar as she seeks a determination from this Court that the will and codicil were not authentic, but rather the result of forgery and fraud committed primarily by Junior and Papa, Plaintiff is asking this Court to review and reject the state court's decision to allow probate of the will.

---

[10] Plaintiff alleges violations of her rights under the Fifth, Sixth, Seventh and Fourteenth Amendments. Am. Compl. at 13. Her due process claim appears to be limited to denial of her due process rights by New York State officials. It is properly brought under the Fourteenth Amendment and not under the Fifth Amendment. The Court is unable to identify any basis for Plaintiff's Sixth and Seventh Amendment claims.

Plaintiff's present action adds new claims as well, but "a federal suit is not free from Rooker-Feldman's bar simply because the suit proceeds on legal theories not addressed in state court." Hoblock, 422 F.3d at 87. The new claims, such as those involving the bribery of judges are wholly conclusory, completely unsupported by facts, and simply asserted as a way of explaining the state court decisions that Plaintiff now seeks this Court to review and reject. See infra at Sec. III.D. Thus, Plaintiff is asking this Court to review, under the guise of a constitutional due process claim, the judgments rendered in state court from which her complained of injury directly flows. See Hoblock, 422 F.3d at 88 ("in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments.").

The injury Plaintiff complains of is actually one caused by the state court's judgment to allow probate of her the will and codicil rather than Papa and Junior's alleged forgery of that will and codicil. Therefore, the second and third requirements for the application of the Rooker-Feldman doctrine are present.

Finally, the state court judgment and appeal were both rendered years before Plaintiff filed her Complaint. Compare Hoye Order (Dkt. No. 23 Ex. A ) (issued Jan. 11, 2006) and Peters Order (Dkt. No. 23 Ex. B) (issued May 10, 2007) with Compl. (Dkt. No. 1) (filed Aug. 26, 2009). The Rooker-Feldman doctrine is applicable, and this Court, therefore, lacks subject matter jurisdiction to hear Plaintiff's action. Hence, her Amended Complaint must be dismissed.

**C.      The Amended Complaint is Barred Under the Doctrine of Collateral Estoppel**

The above finding that the Rooker-Feldman doctrine applies depends upon the inescapable conclusion that the gravamen of Plaintiff's action arises from what she believes is the Surrogate Court's incorrect decision, and the Appellate Division's affirming that decision. See generally Am.

13

Compl. Relatedly, the essence of her current action consists of the same issues she litigated in state court. Specifically, those issues such as the alleged forgery of her father's signature that were litigated and actually decided in her probate challenge form the basis of her instant action. See Hoye Order; Peters Oder. Thus, in addition to the fact that the Court is divested of jurisdiction under the Rooker-Feldman doctrine, the doctrine of collateral estoppel, or issue preclusion, prohibits Plaintiff from re-litigating the issues central to her action. See Cent. Hudson Gas & Elec. Corp v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir. 1995) (collateral estoppel applies where: " (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits.").

Plaintiff's Amended Complaint is inextricably based on contentions about identical issues already decided in the state court's decision to allow probate of the will. The state court considered Plaintiff's claims that the will and codicil were inauthentic and/or the result of undue influence. See Hoye Order. Plaintiff's new allegations of judicial bribery are wholly unsupported, see infra at Sec. III.D, and do not persuade this Court that she was not given a "full and fair opportunity" to litigate those issues in the prior proceedings. To the extent that Plaintiff wished to raise these allegations, she could have done so on appeal or as the basis of a motion for reconsideration before the state court. She did not. Rather, she has simply restated the same allegations that she litigated in her probate challenge, this time framed as constitutional claims. She is barred from doing so, and because her Amended Complaint is utterly dependent upon those previously litigated issues, it must be dismissed.

**D.      The Amended Complaint Fails to State a Plausible Claim for Relief**

Plaintiff's Amended Complaint is replete with unsupported legal conclusions.  Defendants

assert that Plaintiff's Amended Complaint must, therefore, be dismissed, pursuant to Federal Rule

of Civil Procedure 12(b)(6), for failure to state a plausible claim for relief.  In reviewing this ground

for dismissal the Court shall accept Plaintiff's factual allegations as true and "draw all inferences in

the light most favorable" to her.  In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007);

Ruggles v. Wellpoint, Inc., 253 F.R.D. 61, 65 (N.D.N.Y. 2008).  Under this standard, "[t]he

movant's burden is very substantial, as 'the issue is not whether a plaintiff is likely to prevail

ultimately, but whether the claimant is entitled to offer evidence to support the claims.'"  Log On

America, Inc. v. Promethean Asset Mgmt. L.L.C., 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001)

(quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotation and

citations omitted)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, __ U.S.__, 129 S.

Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This

plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  Id.  Facial plausibility exists "when the pleaded

factual content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to

relief."'"  Id. (quoting Twombly, 550 U.S. at 557).  Additionally, the "tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id.

15

Thus, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. As to Plaintiff's well-pleaded factual allegations, the Court will "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Plaintiff alleges that Defendants Barbara Keller Castiglione, Gem Jewelers, Christine Chaite, Carl Kempf engaged in an unlawful conspiracy that ultimately deprived her of her constitutional rights, but she provides absolutely no factual support for her claims. Defendant Barbara Keller Castiglione, through whose actions Plaintiff's claims against Gem Jewelers apparently lie, and Defendant Christine Chaite are alleged to have participated in the overall collusion and had "supportive roles to play in the fraud." Aside from that conclusion, these three Defendants are barely mentioned in the Amended Complaint. Plaintiff provides no factual support or even explanation of her legal claims as to these Defendants. Those claims, therefore, are dismissed.

Plaintiff similarly provides no support for her claims against Kempf. She asserts that Papa enlisted Kempf's support to create fraudulent documents and misrepresent facts at oral argument. Am. Compl. ¶ 6. Presumably, Plaintiff is commenting on the legal work Kempf preformed as an employee at Hodgson Russ, LLP in its work on the will probate. From that single, conclusory allegation, unsupported by any facts, Plaintiff alleges at least nine causes of action against Kempf. She thus fails to allege a plausible claim for relief, and her action as to Kempf is dismissed.

Plaintiff seeks to hold liable Mark Lasch, and via Lasch's actions, the remaining KeyBank Defendants for breach of fiduciary duties, fraud, negligence, unjust enrichment, and other causes of action. The wrongful conduct alleged, as far as the Court is able to discern, is Lasch's failure to respond to Plaintiff's request for an accounting and distribution of her father's trust assets which

were managed by Lasch and held in the KeyBank institutions.  From this, Plaintiff concludes, again without factual support aside from the alleged failure to respond to Plaintiff's request, that these Defendants were involved in the conspiracy and engaged in the fraudulent concealment of Plaintiff's father's assets.  Plaintiff also alleges that Lasch "worked in collusion" with Hoye, see Am. Compl. ¶ 6, but offers absolutely no factual support.  The same is true of Plaintiff's allegation that Lasch (and presumably KeyBank) "colluded" with Papa and Junior "to fraudulently conceal from Plaintiff all assets of the Trust."  Id.  The Court will not assume the truth of Plaintiff's legal conclusions that Lasch's involvement with Hoye, Papa, and Junior constitutes conspiracy or fraud. Simply put, without describing, and in the case of fraud, without describing with particularity, see Fed. R. Civ. P. 9, the facts upon which she reaches her conclusions, Plaintiff's pleadings fail to state a plausible claim.  Assuming the truth of Plaintiff's assertion that Lasch disregarded her request for an accounting, Plaintiff has alleged nothing more than facts merely consistent with liability.  This is insufficient to state a plausible claim.  Iqbal, 129 S. Ct. at 1949.  Plaintiff's action as to the KeyBank Defendants is, accordingly, dismissed.

Plaintiff asserts that Papa and Junior offered bribes, which Hoye and Peters took, and that these illegal payments, rather than the substance of Plaintiff's probate challenge formed the basis for the Judicial Defendants' rulings.  Plaintiff reaches the conclusion that these Defendants were involved in this conspiracy to defraud the court and deprive her of her constitutional right to due process in her probate challenge because there were ex parte communications between the Judicial Defendants and Papa, who was acting as counsel to a party coming before them.  Further, Plaintiff notes that the decision issued by the Hoye closely tracked the arguments made by Papa.  Again, while these facts may be consistent with Defendants' liability, they fall far short of stating a

plausible claim.  Iqbal, 129 S. Ct. at 1949.  Ex parte communications and judicial opinions that

closely match one party's arguments are not so uncommon as to support an inference capable of

sustaining that a conspiracy or bribe occurred.  Plaintiff's allegation that Peters admitted hearsay

evidence and ruled inconsistently with governing authority, similarly fails, as these are legal

conclusions not entitled to an assumption of truth.  Plaintiff's pleadings are bereft of facts

supporting these conclusions, providing another ground for dismissal of these claims.

Additionally, to the extent Plaintiff seeks to hold the Judicial Defendants personally liable

for issuing their decisions, admitting evidence, etc., her action cannot survive.  Not only are these

unsupported legal conclusions, the challenged actions also constitute judicial decisions made in the

course of a proceeding.  As such, the Judicial Defendants enjoy absolute immunity from personal

liability for these acts.  See Pierson v. Ray, 386 U.S. 547, 553-55 (1967) ("immunity applies even

when the judge is accused of acting maliciously and corruptly"); see also Dennis v. Sparks, 449 U.S.

24 (1980); Young v. Selsky, 41 F.3d 47, 51 (2d Cir. 1994).

Plaintiff's Amended Complaint names Peters, though not Hoye, in her official as well as

individual capacity.  Here too, however, Peters is immune from suit, in this case under the Eleventh

Amendment.  That Amendment generally protects the state and arms of the state from liability.  See

Will v. Michigan Dept of State Police, 491 U.S. 58, 71 (1989); Pennhurst State School & Hosp. v.

Halderman, 465 U.S. 89, 100-101 (1984).  This immunity would not extend Plaintiff's seeking

declaratory relief against to Peters' enforcement of an unconstitutional state statute.  See Ex Parte

Young, 209 U.S. 123 (1908).  The Amended Complaint alleges that the New York State Surrogate

Court law is an unconstitutional statute, and to the extent that Plaintiff seeks to preclude Peters from

enforcing it, Eleventh Amendment immunity may not apply.  Given this Court's dismissal of

18

Plaintiff's Amended Complaint, it need not address the constitutionality of the challenged law.

     **F.     Plaintiff Fails to Allege Facts Sufficient to Maintain an Action Pursuant to 42 U.S.C. § 1983 or 42 U.S.C. § 1985**

Plaintiff alleges that the private actors named as Defendants were involved in the conspiracy with the Judicial Defendants and thus were acting under color of state law as required to commence an action pursuant to 42 U.S.C. § 1983. Am. Compl. at 12. Plaintiff alleges certain facts, mentioned above, that she claims support her contention that Junior, Papa, and Hodgson Ross, LLP offered bribes to the Judicial Defendants. Plaintiff offers no such facts against any of the other private Defendants. In fact, from her Amended Complaint, the only party who could be construed to have had any interaction with the Judicial Defendants is Kempf, who allegedly submitted false documents and misrepresented facts at oral argument. See generally Am. Compl.

"[A] person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law,'" Polk County v. Dodson, 454 U.S. 312, 317-18 (1981) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Private actors, of course, may act "under color of state law" for purposes of § 1983 if they are jointly engaged with state actors. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 151 (1970). Indeed, the Supreme Court has specifically ruled that where a plaintiff alleges "that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge . . . private parties conspiring with the judge were acting under color of state law." Dennis v. Sparks, 449 U.S. 24, 28 (1980). Nevertheless, after the Supreme Court's ruling in Iqbal, 129 S. Ct. 1937, this Court affords no assumption of truth to Plaintiff's conclusory allegation that Defendants "engaged in a kind of a conspiratorial involvement and intimate nexus with state

19

officials . . . that justifies treating them as state actors [and] subjects them to liability under 42

U.S.C. § 1983." Am. Compl. at 12.  Plaintiff's factual allegations, even when viewed in the light

most favorable to her, do not give rise to a plausible inference that the private actor Defendants were

acting under color of state law.

A markedly different situation existed in Dennis, 449 U.S. 24, where the alleged conspiracy

at the center of the dispute involved a trial court judge who, allegedly in exchange for a bribe,

granted a temporary injunction in favor of his alleged private party co-conspirators thereby

depriving plaintiffs of their ability to produce oil on land adjacent to defendants.  See Sparks v.

Duval County Ranch Co., Inc., 588 F.2d 124 (5th Cir. 1979).  The Supreme Court rested its finding

that the private parties alleged to have conspired with a corrupt judge should be considered to be

acting under color of state law for purposes of § 1983 on a complaint with far more factual support

for its conspiracy allegation then that provided by Plaintiff.  Notably, the allegedly corrupt judge's

decision had already been repudiated on appeal as an abuse of discretion.  Winslow v. Duval County

Ranch Co., Inc., 519 S.W.2d 217 (Tex. Ct. App. 1975).  The Appeals Court excoriated the trial

judge's ruling stating,

> under broad conclusory allegations of a very general nature applicable to all defendants alike
> (when the proof showed a lack of concert of similarity of action), the trial court enjoined All
> defendants in a common order prohibiting them from the further exercise of their lawful right
> to produce oil. This was done upon a record which did not support the broad order which was
> entered; upon a record which contained neither pleading nor proof of the lack of an adequate
> remedy at law; where there was no allegation of insolvency or proof of inability to respond in
> damages; done without giving any consideration to the doctrine of clean hands, laches,
> balancing of equities, or a showing that a less drastic injunctive order . . . was not adequate to
> protect plaintiff's alleged rights.

Id. (footnotes omitted).

In the instant action, in contrast, Judge Peters affirmed Judge Hoye's decision.  Plaintiff

submits that Peters' Order was also the result of a bribe, though she does not so explain the concurring votes of the four other judges on the panel, none of whom are alleged to have been bribed.

Additionally, in the Texas case, in support of its § 1983 action against the private parties, Plaintiff provided a pleading "assert[ing] the existence of a conspiracy in considerable detail . . . [and] sufficiently stated the facts on which [the allegations] relied" Sparks v. Duval County Ranch Co., Inc., 604 F.2d 976, 978 (Tex. Ct. App. 1979).  Plaintiff's Amended Complaint, in contrast, alleges no facts suggesting any interaction or connection between most of the private actor Defendants and the Judicial Defendants.  For those few who are alleged to have interacted with the Judicial Defendants, namely Junior, Papa, Hodgson Russ LLP, and Kempf, Plaintiff's allegations are too implausible to support the conclusions she reaches.

Finally, in the Texas case, the Appeals Court took note that the allegedly corrupt judge had been removed from office by the Texas Supreme Court for acts of willful misconduct and was serving time in a federal penitentiary for income tax evasion.  Sparks v. Duval County Ranch Co., Inc., 588 F.2d 124, XX (Tex. Ct. App. 1979) (citing Matter of Carrillo, 542 S.W.2d 105 (Tex. 1976)).  Certainly no such judgments have been made in the case of Hoye or Peters.

None of the facts making plausible the alleged conspiracy, which allowed the plaintiff in Dennis, 449 U.S. 24, to proceed against private parties pursuant to § 1983 exist in the instant action. Having alleged no plausible conspiracy, Plaintiff necessarily fails to allege the precondition for maintaining her § 1983 action.

This Circuit has similarly made explicit that a factual basis supporting an allegation of conspiracy must exist in order to maintain and action under § 1985.  See Webb v. Goord, 340 F.3d

21

105, 110-11 (2d Cir. 2003) (in the context of a § 1985 claim "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (internal quotation omitted).  Moreover, in order to maintain her action under § 1985[11] Plaintiff must "allege a class-based, invidiously discriminatory animus." Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir. 1978) (internal quotation omitted); Redcross v. Rensselaer County, 511 F. Supp. 364, 373 (N.D.N.Y. 1981).  Plaintiff fails to allege any such class-based animus on the part of any of the Defendants.  In sum, Plaintiff has not alleged facts sufficient to support an action brought pursuant to 42 U.S.C. §§ 1983 or 1985.  This provides another basis for dismissal of her Amended Complaint.


IV.    **PLAINTIFF'S MOTION FOR SANCTIONS AND OTHER FORMS OF RELIEF**

        Plaintiff's response to Defendants' Motions to dismiss includes a Cross-Motion seeking various forms of relief.  Dkt. No. 34.  Firstly, Plaintiff seeks a 90-day stay of her case, during which time she can "refine [her] initial case pleading into a Second Amended Complaint."  Id. at 56. Plaintiff notes that medical issues have prevented her from perfecting her filings previously. Plaintiff further "seek[s] from the [Court] the names of 1-3 cases similar in content to [hers], where the [Court] believes the complaint . . . is well written."  Id.  Plaintiff also seeks an Order mandating that Defendants' "counsel henceforth place their factual allegations into an attorney Certification with perjury jurat," and an additional "Order that sanctions each counsel about falsifying facts or

_____

    [11] Presumably, Plaintiff intends to bring her action pursuant to § 1985(2), which provides a cause of action where, "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws."  42 U.S.C. § 1985(2).

law in a motion for relief and for attaching extra-pleading material in a R.12(b)(6) motion." Id.  She claims that Defendants' Motions should be struck and sanctions imposed to correct the "disgrace to the profession and to the people's legal system" they reflect and to protect Plaintiff from having to "continuously correct these intentional misrepresentations crafted to poison the well and seek unfair advantage." Id.

Plaintiff's Motion is denied in its entirety.  Plaintiff's request for a stay so she may draft a Second Amended Complaint shall be treated as a Motion to amend pursuant to Federal Rule of Civil Procedure 15.  Pursuant to that Rule, leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962); Manson v. Stacescu, 11 F.3d 1127, 1133 (2d Cir. 1993).  Leave shall not be granted, however, where amendment would be futile.  Foman, 371 U.S. at 182; Freeman v. Marine Midland Bank - New York, 494 F. 2d 1334, 1338 (2d Cir. 1974); Esposito v. Metro-North Commuter R. Co., No. 91-CV-946, 1992 WL 165821, at *2 (N.D.N.Y. July 8, 1992).  Given the above findings, particularly those relating to Rooker-Feldman and collateral estoppel, but also in light of the myriad of other insufficiencies of Plaintiff's pleadings, this Court finds that amendment would be futile.  As noted, Plaintiff is barred from re-litigating the central issues of her Amended Complaint, and this Court has no jurisdiction to conduct the review of the state court decisions that form the essence of her action.  Since amendment would be futile, leave to amend is denied.

Additionally, this Court is unable to dispense legal advice to Plaintiff.  See Muskrat v. United States, 219 U.S. 346 (1911).  Furthermore, in light of the above, such request is moot.  Thirdly, the Court shall not issue the orders requested by Plaintiff.  The first, requiring Defendants' counsel to place their factual allegations into an attorney certification with perjury jurat, is moot.

Finally, the Court finds such an order unnecessary.  Counsel has attested to the accuracy of their submissions and the Court finds no evidence to doubt their veracity.

For similar reasons, Plaintiff's request that sanctions be imposed for alleged misrepresentations by Defendants' counsel is denied.  The Court concludes that issuing such sanctions is inappropriate and unwarranted.  Defendants have advocated zealously and successfully for their clients, but there is absolutely no evidence that in so doing they falsified facts or knowingly misrepresented law.  Plaintiff's Cross-Motion is, accordingly, denied.


**V.      SERVICE COSTS AND OTHER RELIEF**

Plaintiff further seeks service costs pursuant to Federal Rule of Civil Procedure 4(d)(2) and other forms of relief including declaratory judgment as to the timeliness of her service.  Dkt. No. 38. Plaintiff's Motion (Dkt. No. 38) reiterates her request for default judgment as to Defendant Kempf. Id.  For reasons discussed above, Plaintiff's Motion is denied.


**VI.     CONCLUSION**

Based on the foregoing discussion, it is hereby

**ORDERED**, that Plaintiff's Request for default judgment as to Defendant Kempf (Dkt. No. 37) is **DENIED**; and it is further

**ORDERED**, that Defendant Kempf's Motion to vacate Plaintiff's request for default judgment and for leave to join the Hodgson Russ Defendants' Motion to dismiss (Dkt. No. 40) is **GRANTED**; and it is further

**ORDERED**, that Defendants' Motions to dismiss Plaintiff's Amended Complaint (Dkt.

24

Nos. 23, 24, 26) are **GRANTED**; and it is further

ORDERED, that Plaintiff's First Amended Complaint (Dkt. No. 15) is **DISMISSED in its**

**entirety with prejudice**; and it is further

ORDERED, that Plaintiff's Cross-Motion (Dkt. No. 34) is **DENIED**; and it is further

ORDERED, that Plaintiff's Motion for service costs and other relief (Dkt. No. 38) is

**DENIED**; and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.


DATED:      May 24, 2010
            Albany, New York


Lawrence E. Kahn
U.S. District Judge